**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**vs.**                                        **Case No. 8:05-CR-144-T-27TGW**

**BENJAMIN C. ACKERMAN**

_____/

## ORDER

**BEFORE THE COURT** are Defendant's Motion to Suppress Evidence (Dkt. 57) and

Defendant's Motion to Suppress Post-Arrest Statements (Dkt. 58). An evidentiary hearing was

conducted on January 26, 2006. For the reasons discussed, both motions are DENIED.

The material facts are largely undisputed. At approximately 5:15 A.M. on February 23, 2005,

Bradenton Police Officer William Weldon responded to a "loud music" complaint to the Shore Walk

community, a two-story apartment/condominium building. He arrived at approximately 5:25 A.M.

and could hear loud music coming from an upstairs apartment. As he ascended the stairs, he

observed a pair of men's underwear at the foot of the stairs. He banged on the apartment door and

rang the doorbell but received no response. He described the music as "extremely loud." As he

continued attempting to obtain a response from the apartment, the adjoining neighbors came out and

told him that there had been a violent argument between a male and female the night before and that

the male had thrown clothes down the stairs.[1]

Weldon continued to bang on the door for approximately 45 minutes. In an attempt to

---

[1] The 'night before' referenced by the neighbors was the night of February 21st.

-1-

ascertain the owner of the apartment, he contacted the leasing company. A security guard provided him with the owner's identity. Weldon contacted the owner and learned that the apartment was leased to Linda Grisson. He asked the owner bring a key to the apartment to him.

Weldon then telephoned Ms. Grisson, who confirmed that she leased the unit but that her son lived there. Weldon described the loud music coming from the apartment and told her that no one answered the door. She told Weldon that if a Suburban and red van were in the parking lot, her son was probably in the apartment. Weldon saw the vehicles in the parking lot and requested Grisson's consent to enter the apartment. She told him she would call her son and have him answer the door. After waiting five to six minutes, Weldon attempted to contact Ms. Grisson again, as no one had responded from within the apartment. He couldn't reach her.

At approximately 6:37 A.M., the owner of the apartment arrived and gave Weldon the key, which he used to open the door. The door was chain locked and could only be opened three to four inches. When the door opened, Weldon immediately detected a strong odor of marijuana and saw the Defendant standing at a kitchen counter cutting what appeared to be crack cocaine. He also saw a female in the kitchen cutting something with scissors. He observed a burnt marijuana joint on the kitchen counter and saw Defendant sweep what appeared to be crack cocaine residue off the counter. Weldon motioned for the Defendant to come to the door, which he did. While the Defendant was opening the door, Weldon called for back-up.

When the door opened, Weldon observed a dagger type knife on the floor near the Defendant. Weldon pulled his gun and instructed the Defendant to get down on his knees, which he refused to do. Defendant started "inching" toward Weldon in what Weldon described as an aggressive manner, at which point Officers Anderson and Smith arrived. Anderson described

-2-

Defendant as "bowed up" and "angry."  He also observed the knife on the floor and smelled marijuana.  When Smith pulled a taser, Defendant finally complied and went to his knees on the floor.

After the Defendant and the female were detained and secure in the patrol cars, Anderson returned to the apartment to secure it and encountered another female exiting the apartment.  After she was detained, Weldon and Anderson conducted a sweep of the apartment, during which they observed a glass container with what appeared to be a full cookie of crack cocaine in it and another container containing what appeared to be crack cocaine residue.

From the time Weldon first arrived at the apartment until it was swept more than an hour later, the music had continued.  During the sweep, Weldon located the source of the music, a stereo boombox, which he unplugged.  After the apartment had been swept and secured, Officer Smith obtained a written consent from the Defendant to search the Suburban and the apartment.  Defendant was read his *Miranda* warnings and requested to speak with someone about narcotic activity.  Thereafter, Defendant spoke with a detective and made admissions involving drug activities.[2]

Linda Grisson, the mother of the Defendant, testified.  She denied telling Officer Weldon that if her son's vehicles were in the parking lot, he was probably there.  She maintains that she told him she would call someone else, who she identified as Larry Moore, to go to the apartment.  The inconsistency between Officer Weldon's version of the telephone conversation and Ms. Grisson's is easily resolved, the Court finding that Ms. Grisson is not credible.

A warrantless search of a residence is presumptively unreasonable and unconstitutional.

---

[2] Defendant does not challenge the consents.  Defendant's entire argument rests on his contention that the warrantless entry into the residence was unconstitutional.

*Payton v. New York*, 445 U.S. 573, 586 (1980). Exceptions to the requirement of a warrant to conduct a search of a residence exist in "only a few, exceptional circumstances." *United States v. McGough*, 412 F.3d 1232, 1247 (11th Cir. 2005). One such exception is when a police officer reasonably believes a person within a residence is in need of immediate aid. *Id.* Moreover, if an officer observes contraband in plain view while inside a residence responding to a legitimate emergency, that evidence may be seized. *Id.,* citing *Mincey v. Arizona*, 437 U.S. 385, 392 (1978).

In this case, the parties agree that the constitutionality of Officer Weldon's entry into Defendant's apartment turns on whether or not exigent circumstances existed.[3] When exigent circumstances confront a police officer, an immediate response is required, particularly where there is danger to human life. *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002). In those circumstances, when it is not feasible for an officer to obtain a warrant, the officer may lawfully enter a residence without a warrant. *Id.*

Based on all of the circumstances, the Court finds that Officer Weldon was confronted with exigent circumstances sufficiently compelling that the warrantless entry into Defendant's apartment was objectively reasonable under the Fourth Amendment. *See Mincey*, 437 U.S. at 394. From the time Officer Weldon arrived at the apartment until he opened the door with the owner's key, more than an hour had passed. During that entire time, the music continued to blare and he got no response from within the apartment, notwithstanding banging on the door and ringing the doorbell continuously for approximately forty-five minutes. He feared that someone inside was in danger, based on what he was told by the neighbors. His concerns were elevated when he spoke with Ms.

---

[3] The Government does not rely on the "so called community care taking functions" of police officers. *See United States v. McCough*, supra at 1239.

Grisson, who told him her son should be inside the apartment if his vehicles were in the parking lot, which they were.

While Weldon did wait for more than an hour after arriving at the apartment before gaining entry, during that time he exhausted all reasonable efforts to attract the attention of any inhabitants by continuously banging on the door and ringing the doorbell. He made contact with the owner of the apartment as well as the lessee, Ms. Grisson, in an attempt to gain entry. After speaking with Ms. Grisson and being told she would have her son open the door, he waited another five to six minutes before using the owner's key to open the door. Under the circumstances,  his actions were reasonable.

While loud music in and of itself may not have constituted an exigent circumstance justifying a warrantless entry, Weldon had banged on the door with no response for forty five minutes. During that time, he learned that there had been a violent domestic argument the night before and had observed men's underwear at the bottom of the stairs consistent with what the neighbors had told him. When he learned from Ms. Grisson that her son was probably in the apartment, it was reasonable for Weldon to conclude that there was potential danger to human life, that is, that the assumed inhabitant was not able to respond because of injury, incapacitation or worse. At that point, it was not feasible for him to obtain a warrant without risking that the delay would increase the risk of danger to the assumed inhabitant.

It was objectively reasonable law enforcement activity for Officer Weldon to use the owner's key to enter the apartment without waiting for a warrant. The music had been blaring for well over an hour. He had exhausted all reasonable efforts to attract the attention of any inhabitant of the apartment and there was a reasonable concern from an objective perspective that human life was in

-5-

danger. Once he gained entry, based upon the strong odor of marijuana and what he observed in the kitchen, he had probable cause to arrest the Defendant and seize the contraband.

Moreover, the officers were well within their discretion and authority to conduct a sweep of the apartment for their own protection and to seize whatever contraband they observed in plain view during the sweep. A protective sweep incident to a lawful arrest is valid if it is quick and the search limited for the safety of the officers. *United States v. Hromada,* 49 F.3d 685, 690 (11th Cir. 1995), citing *Horton v. California*, 496 U.S. 128 (1990) ; *see also United States v. Tobin*, 923 F.2d 1506 (11th Cir. 1991), citing *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971)("Where the initial intrusion that brings the police within plain view of [contraband] is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is . . . legitimate.")

Finally, the subsequent searches of the Suburban and the apartment were incident to the written consent of the Defendant and were unquestionably reasonable. For these reasons, it is

**ORDERED AND ADJUDGED** that Defendant's motions to suppress (Dkts. 57, 58) are DENIED.

**DONE AND ORDERED** in chambers this *30*th day of January, 2006.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:  Counsel of Record